May it please the court, my name is Jim Gwynn, I'm here on behalf of officers Quinn, Baxley and Pinkerman and my co-counsel Chris Newton is here on behalf of Officer Miles. All four of these officers were at the time of the incident corrections officers with Western Virginia Regional Jail. The plaintiff, Mr. Cox, was an inmate at the Western Regional Jail. The background of the case is fairly simple. There was a group that Mr. Cox described as running the pod that he was in. They threatened him. He reported the threat to Officer Miles who brought in officers Quinn, Baxley and Pinkerman to discuss it. They discussed it with Mr. Cox and then put their heads together to decide what they were going to do about it. They decided that they would go approach the group that was threatening Cox and in questioning the group, the group told them no, there's not going to be any problem here. They're going to keep to themselves and we're going to keep to ourselves and there won't be an issue. Can I just stop you right there? So that particular fact, these reassurances that the gang allegedly gave the officers, that doesn't show up in the district court's opinion, right? It doesn't. Well, what do we do with that because I'm just wondering how that sort of fits with our jurisdiction and this kind of interlocutory posture. We can't really review the district court's fact finding. No, but there is no dispute of fact to it in the record, Your Honor. Everyone agrees that that conversation took place. But does everyone agree as to the content of the conversation, the precise content? I do write the plaintiff arguments strenuously that part of what the officers got wrong here was that they should never have approached these gang members because he had told them if you do that, that will make things worse for me. So he's obviously agreeing that some conversation took place, but what do we do with the fact that the district court didn't discuss the content of the conversation? Because I know, if I'm getting this right, all we can do in this posture is on the facts as the district court saw them. Is there a legal mistake? I would submit to the court that you're not limited to just the facts that the district court saw, but rather the facts that are in the record that are uncontested. And the reason I would submit that is, well, actually, I'll say it this way. Courts can inadvertently leave out undisputed facts. That doesn't change what facts are in the record. Are you saying that the fact that, as I understand it, Mr. Cox didn't speak to the content either? Only the officers were there. So the fact that it's undisputed simply means that Mr. Cox didn't speak to it, not that he acknowledged that it was accurate. There's a difference between there being agreement that these are the facts and that only one party is in a position to assert the facts. In the record, Mr. Cox is quoted as saying, I told the officers when they held the fellows back. What I was referring to was the specific conversation between the officers and the members of the gang. Mr. Cox would not have had knowledge of that because he was not. Exactly. So that's why I'm quibbling with your characterization of it as undisputed. It's hard to dispute something that only one party is aware of. It is accredited by the district court. It happens that only one party has knowledge of a particular item. When that party does testify and no one says anything to the contrary, that is the evidence that the court has before it. What are we then to make of the fact alluded to that is, I think, undisputed and I believe alluded to by Judge Harris, and that is that the officers did the one thing that Cox asked that they not do. That they not identify him to the gang as the source of complaint. And that would put him in a worse position. To my recollection of the record, there's no evidence other than Mr. Cox saying, you guys must have told them it was me, that the corrections officers ever said who it was that they got the complaint from. My question went to the fact that the officers did precisely, and I'm not sure you can disagree with this, that they did precisely what Cox asked that they not do. Because of the difficulty that it would cause him. And what I was trying to get to was, and I will get to your question if I can just preface it by saying that Cox is not quoted in the record as saying, I knew that they mentioned me to them. I did tell them that I did not want them to go and discuss this. And I understand it. And I would submit to the court that the officers had to make a decision at that point what to do. I thought he said, please don't talk to the gang because it would put an X on my back. Yeah, he said, X on my back. He said, don't bring this up with them, this will put an X on my back. So Judge Duncan's question is going to be a question to the whole, this affirmative action they take after having been told not to do this. And I think we ought to look at least at the context you're talking about. You have experienced officers here, and you've got to believe if an inmate tells you, I would think, please don't go tell this gang that I'm sourcing this information because I could get hurt. And they do it. Why is that not sufficient at that point in time to say they have done something to put this individual in danger? And they were put on notice of it by the request, which was part of my question. They had every reason to expect, because Cox told them, that there could be dire consequences if they talked to the gang. And that's precisely what the officers did. In other words, what they did was the one thing that they had been put on notice would exacerbate the situation. And that was the inmate telling the guards, I believe this is going to exacerbate the situation. And the guards have to make a decision at that point as to whether or not it will. But the choice they made was the one choice that had been identified as having consequences. They had a choice. He had asked to be moved. Or they could have done nothing. But if they had done nothing, the situation would have been better than it was by taking the one course that had been pointed out to them as the course that would result in harm. I would submit to the court, number one, that there is not a guarantee that it's going to result in harm. But they were put on notice of all of the choices that they could make. And is there an issue of fact regarding that? No, there is no issue of fact regarding that trial. Well, then why are we going back and forth on it? There were three choices that the officers could take. Why is it not at least a question of fact as to why they selected the one choice that the inmate had identified as being the one that would result in his being injured? And, in fact, he was. And the question assumes that it had to happen that way. It doesn't assume anything. It simply assumes that it's a question of fact as to whether or not the officers were on notice of a possible likelihood of their choice. But by making the choice, they were showing that they weren't deliberately indifferent, Your Honor. By making that choice, regardless of what it was, they took some action. And the precedent from this court … Mr. Cox to delivering Mr. Cox to the gang, it's not the fact that they took an action. It's the fact that the action that they took reflected their response to the request that had been made. And I would submit to the court that that's not the way that deliberate indifference has been interpreted in previous opinions. That, in fact, the previous authorities would show that by taking an action in and of itself, that they show that they're not deliberately indifferent. It may have, in retrospect or in hindsight, been the wrong action. It may not have been the action … But why not? Why wasn't it the wrong action in the context of what they were told? That's what … You keep wanting to ignore the fact that the consequences, the precise consequences that occurred were presented to them. And they chose, in making their choice, to ignore that. Alex, I accept that. What I'm suggesting to you is that in making that decision, that they did enter into some sort of discussion or thought process with regard to it, and therefore they were not deliberately indifferent. That by having them … It wasn't the first time. He had submitted several groups to them before this incident, complaining these people were threatening him. And then I thought the officers called a sergeant. And it seems to me the sergeant said something to the effect, told them what to do, put them in different pods or whatever. They chose instead to go tell this game. Now, it can … You know, the way I see it, I think it still is an issue of fact. I don't think it settles the case today if we don't hold it in favor of disqualified immunity. Still have this argument. But I'm not so sure it should be resolved here on some judgment determination. Because this back and forth that's going on at least indicates there is another interpretation to this. And it does seem very reasonable. And I don't know much about that. I've never been in prison. But it seems like to me you've got a game going. And you tell on that game to the officers. And then they, contrary to your plea or whatever you want to say, go and tell it. And the very thing that he said was going to happen happens. That sounds pretty indifferent to me. At least in terms of a way it could go. In other words, it sounds like enough to be able to conclude that. I'm not saying it absolutely is. But it sounds like a reasonable fact finder could conclude that. And probably could conclude the other side. They did something. The case law does say that. If you do something. And it probably goes more to the clearly established aspect of this. It does, Your Honor. And I pardon for interrupting. But in the circumstances, the assumption after the fact, we know what happened. We're talking about what the officers had to do at the time. And they made the decision. Was it a poor decision? We can argue that. I'm not going to argue strenuously that it was their best decision. But the plain fact of the matter is deliberate indifference is not shown just by a poor decision. Mr. Grund, help. The district court concluded that the record contains evidence that when viewed in Cox's favor, suggests that the officers were aware of and disregarded the substantial risk of harm. What would you take issue with with respect to that conclusion? That they disregarded the risk of harm, Your Honor. They were aware of and, okay. That by going to and explaining why this attack on this gentleman shouldn't have occurred, that they did take some action in response. And that they made a response that was not deliberately indifferent. Mr. Newton. Good morning. May it please the court. My name is Chris Newton, and I stand for Justin Miles in this appeal. In denying qualified immunity for Mr. Miles, the district court erred for three reasons. First, it incorrectly found a genuine dispute of fact as to whether Mr. Miles acted with deliberate indifference towards Mr. Cox. Second, its definition of a clearly established right was far too general. And third, there was no notice to Mr. Miles at the time that this occurred that his particular conduct was unlawful. What was his conduct that was alleged to be unlawful? His conduct that was alleged to be unlawful, he sort of lumped in with Mr. Gwinn's officers during the first part of the day, the initial part of the interaction. And I'd point out to the court that Mr. Miles is not so similarly situated as the other officers and that out of the bunch, he's the one that's not certified. He had been on the job about three months. He couldn't carry mace. So tell me now, as I understand it, this whole discussion that Judge Duncan brought up and I followed up on with counsel regarding don't go telling anybody, after they went and actually told it, the gang then actually threatened him. And this is before he actually got assaulted. So he then goes back and it is Miles that he tells this to that this is happening. What I told you is happening. They threatened me. They said they're going to get me. And Miles threw up his hands. Now, there are cases out there that say that you have to do something. A little different from the other clearly established type of situation that we talked about in terms of if you do something, there's a problem. You may be OK. But if you do nothing, which is what he did, his case seems pretty clear on that, at least from a district court's perspective, that there's an issue of vacuum. Judge, I would respectfully point to the court that at the time that Mr. Miles interacted with Mr. Cox around supper time, which is Mr. Cox's recollection of that, there are a few things that happened. Mr. Miles had up-channeled Mr. Cox's initial concerns to his sergeant. Certified officers had spoken to the involved inmates. Mr. Miles was aware of a conversation and thought that everything was back to normal within the pod and then did, through the remaining hours of the day up until the second time he interacted with Mr. Cox, his rounds within the pod and did not observe anything that he thought was out of sorts. And I would submit that he's not liable. I got that. But the comment I'm addressing is what happened when he came back that second time. You think everything is, I guess you're saying from his perspective, this thing had been fixed by all of the higher-ups. So he didn't have anything to do with this, and the guy comes back to complain again. It's like, no, it's already been fixed. Is that it? He can't view what happened in that second interaction in a vacuum. You have to extrapolate that over the course of the rest of the day. Because Mr. Miles, and this is the essence of farmer. I don't want to cut off your argument unnecessarily, but I do want to make sure we get this point right. The question really goes to your point could be well taken, but if that evidence can be reviewed in a different way, why is that not a, isn't it a reasonable view to say, yeah, well, even taking it in context, he threw up his hands and walked away from him after he got this threat. Well, I would submit to the court that to answer that particular question, the essence of cases like farmer and principles of this court have enunciated, for example, in Rich Bruce, is that Mr. Miles is not liable, even if he knew of underlying facts but believed, even unsoundly, that the risk was insubstantial or nonexistent. And that's why you have to view what Mr. Miles confronted during that second interaction with Mr. Cox, if you will, under a totality of the circumstances and take all those other uncontroverted facts that happened earlier on in the day into account. Because if that second interaction with Mr. Cox could be boiled down to a newspaper headline, what the law in this circuit has been for many years is that ineffective is not the same as indifferent. And so as much as Mr. Cox may want the case to be about McDessie, for example, the proverbial burying the heads in the sand, that's not this particular case based on what happened in the hours  What would be his assessment in terms of what Cox's statements were? I mean, Miles. Essentially he was saying, you know, we already know this has already been taken care of. Was his assessment essentially that Cox was lying? I can't speak to what his assessment was, but what I can speak to is that correctional officers have to make decisions on a day-to-day basis to try to keep order in the institution. And it's not the facts of the case, or it's not precedent, that every single time that somebody raises an issue, got to be removed from the pod, the pod has to be locked down and people have to be investigated. These guys and gals have a tough job, which is to take all the facts that they know when these things happen and make decisions that they see are proper. I would point that in a case that we cited out of the Eighth Circuit, Prater made, Prater v. Dahm, educated us that threats between inmates are common and don't, under all the circumstances, serve to impute actual knowledge of a substantial risk. And that's where Mr. Miles was during that second interaction with Mr. Cox. Mr. Williams? Good morning. May it please the Court, I am Mel Williams. I represent Dwayne Cox, the inmate who was assaulted in this particular incident in the Western Virginia Regional Jail. In this particular situation, the officers knew of a significant risk of serious injury to Mr. Cox. They appreciated the significance of that. We have, in a jail setting, four correctional officers who come to meet with Mr. Cox and another inmate out in the hallway. Officer Miles thought it important to remove these two inmates from the pod, to talk to them away from the other inmates. In fact, it occurred while the members of this gang are at the recreation opportunity that they would have outside of the pod. Mr. Williams? Yes, ma'am. Mr. Gwinn repeatedly said that the officers took an action, and that's the end of the analysis. It appears that the officers would want to say that just because we did anything, if we did anything at all, that is sufficient to mean that we did not exercise deliberate indifference. We didn't show deliberate indifference. The question is, assume there's a constitutional violation. Is there any law that would make these officers believe that their actions were not legal or they didn't do the right thing? In other words, would a reasonable officer in that position have done this? Does the law inform them differently? Any case on that? We've got plenty of cases on the discussion. We had Miles a few minutes ago, if we get there, in action. But when they do something, and there's any case that holds that clearly establishes and puts them on notice, what they're doing is unconstitutional. The officers' actions must be reasonable. I need a case because that's the way this thing has been kept. You go clearly establish, you know how these cases are going. It's almost like you don't even deal with the constitutional issue anymore. You just say, assuming constitutional violation is clearly established. And so I'm not saying we're going there, but I'm trying to put that in perspective. Do I have a case on point that matches these exact facts? No. The closest one we can come to is the one cited, I believe, out of the Eighth Circuit by the appellants about where the two inmates had a history involving- Does it put these defendants on notice? I think you've got to have a case from this circuit or from the United States Supreme Court to do that, don't you? I believe that to determine what is clearly established does not require that there be a case exactly on point with the same exact scenario. Not exactly, but you've got to give them something to give them on notice. Yes. And what would that be? Even under the status of the law when this incident occurred, officers knew that their action must be a reasonable action to guarantee the safety of the inmates. The Supreme Court has told us we can't use general stuff. We can't just say generally, you know, I think it's been pretty clear on that. I'm not saying I'll agree with it. I'm just trying to get something from you to tell me how to deal with it, but that's the law, isn't it? I thought that when it comes to deliberate indifference, right, if a reasonable jury can find that these officers were deliberately indifferent, that means that they purposely ignored what they knew to be a substantial risk or responded in a way that they knew was inadequate. How could that be reasonable? Like I would have thought that when it comes to actual, if you can find deliberate indifference, how can that be reasonable for qualified immunity purposes? Just because the nature of the violation is very unusual, you have to do it on purpose. And that's the answer I thought you were going to go with. You know, essentially, how, I mean, it has to be incongruent. How can you be deliberately indifferent and get that established, and yet you don't know it to be noticed from a clearly established policy? I mean, it's incongruent. I don't know if it's been answered. I don't know if that answers that, but it's a good question, and Judge Harris has posed it. Can I weigh in here? Please. You are the head of the panel. We do have a Supreme Court president that talks about the extent to which correctional offices have a duty to protect inmates from unwarranted risk of harm at the hands of other prisoners, don't we? Yes, Your Honor, of course. Well, isn't that part of the response to Judge Wynn? And I believe it even goes farther, as in the facts of this case, that the officers did the one thing that Mr. Cox said is going to not remedy it, but make it worse. If the officers choose to do exactly what the inmate says is going to make it worse, and these officers are on notice. They're correctional officers. They know what happens to snitches in jail. And we do, at this juncture, this procedural juncture, view the evidence in Cox's favor. We have to. Of course, Your Honor, at summary judgment, absolutely. And these officers, the discussion they had among four officers, calling the sergeant. The sergeant, who gives them many, many remedies, says if you have bullies in the pod, if people are being bullied, move somebody. Move the ones doing the bullying. Move the ones that are being bullied. Lock down the whole pod. Lock down the ones that are causing the trouble. Lock down the ones that are in fear. There were any number of options that the officers had, yet they choose the one that makes it worse. But all of this is good to establish a constitutional violation. The question then becomes, is there really a clearly established problem that needs to then be satisfied if you say it's a constitutional violation because it's deliberate indifference, because of the inherent elements of proving it. That's the question. And I'm not sure I've seen a case on it. Maybe others have seen it. But that's what I'm getting at. I think everything here, yeah, it's a constitutional violation. You can't do all this stuff. But is it clearly established? And we are capping when it comes to what we could be in terms of, certainly in excessive force cases, it's clearly there. But deliberate indifference seems to be different, but I don't know if I've seen a case on it. And I don't know that I can cite to the court a case that's going to resolve the issue in your mind, but I don't believe that gets us to a conclusion that the law is not clearly established. Certainly the law was sufficient for those officers to realize that they are to take reasonable action to guarantee the safety of the inmates. That guarantee, is that a farmer? And this court cited it in McDessie a year ago. In fact, that's what caused the district court. The district court initially granted summary judgment, announced from the bench it would grant summary judgment. The McDessie opinion came down. The district court asked for further briefing and then reversed itself. And that's how we end up here today in the posture of the case. So we get there, all we got to do is rely on farmers. Yes, I believe farmer and certainly it's progeny. Certainly the officers know that we have to take reasonable measures to guarantee inmate safety. Because in that jail context, as farmer says, inmates are removed of virtually every means to self-protect. So it's relying, they are relying upon the guards to do that for them. And there are any number of reasonable measures that the officers could have taken in this situation as their sergeant told them. The officers appreciated the seriousness that Mr. Cox, being the older, smaller person in response to a gang of three and then four larger, younger inmates, created a very serious threat to Mr. Cox. That's why they called the sergeant. That's why they had four guards talking about what to do. They then acted unreasonably. And they did just the one thing that made it worse. And what we also know is that when Mr. Cox had complained before and Mr. Keller, Captain Keller I believe it was, investigated that, that is what initially identified Cox as the snitch. And then when a month later, the guards go back to the gang members and address the same situation. More threats going on, more bullying in the pod. The inmates know that's Cox. We don't know the contents from Mr. Cox's situation of what exactly was said to the gang after he spoke to them on the day of the attack. But we know that when those inmates came into the pod after the guards spoke to them, Cox, he clearly had a huge target on his back. And Mr. Cox then makes Mr. Miles aware of it at the dinner time. He says, you talked to them, you did the one thing that we said is going to make it worse. And Mr. Miles, in the epitome of deliberate indifference, we believe at that point, says, what now, Cox? Throws up his hands and walks away. Clearly what the officers chose to do in talking to the inmates was not a reasonable response. Any response cannot be what satisfies an officer's duty under the Constitution. And in that way... Doesn't Farmer say that? I thought that much was clear. Farmer says that the response would be so obviously inadequate that a response was inadequate. I'd like to say I think that's exactly my point, Your Honor, that yes, Farmer does make this an easy case just from that very landmark case that we have as applicable to these facts. And unless the court has further questions, I believe we've addressed at least my points and hopefully the questions of the court, I will take my leave. Thank you. Thank you. Mr. Gwynne, I believe you're next. Thank you, Your Honor. The bulk of our brief is devoted to the question, the second prong of the qualified immunity analysis. I mean, that's where we are is the clearly established analysis, Your Honor. And to look at Farmer and say, can the response be so inadequate as to be deemed basically illegal, is sufficient but not, in the understanding of Farmer, but not sufficient in the application of the qualified immunity to this case. Because I think what, it's not that the response can be so plainly inadequate that we deem it illegal. It's that it can be so plainly inadequate that a fact finder can impute or infer that the officers did it on purpose. They knew it was inadequate. They did it anyway. And if that's what we think a reasonable fact finder could infer, I don't understand how you get from there to qualified immunity. The whole point is they did it on purpose. And it is 100% clear that officers may not on purpose subject prisoners to violence from other prisoners. There's nothing in the record that suggests it was on purpose, Your Honor. Well, there certainly is in the record, it certainly is clear as daylight from the record that it was knowing. And it has to be knowing because Cox told them. That's the thing that makes this so difficult, it seems to me. That the officers were put on, and purposeful doesn't mean we want Mr. Cox to get hurt. Purposeful means deliberate and knowing in that they were put on notice of what the consequences of their acts were likely to be. It's sort of hard for me to conceive of facts that are more clear from the question of an action that is knowingly taken. Well, Your Honor, I guess I would look at Rich versus Bruce. Well, maybe if you could just stay with the facts here, because these are pretty remarkable facts. In a qualified immunity situation, Your Honor, all we can do is look at what courts have previously decided. Mr. Quinn, what we do is viewing the evidence in the light most favorable to Cox at this juncture, decide whether the officers knowingly acted in such a way as to put the prisoner at risk of harm. And I would submit to the court that there hasn't been that evidence of knowing, and under the clearly established,  I honestly am at a loss on how it cannot be knowing. I'm sorry, I'm trying. But they had to have known they were told. What does knowing mean to you then? Knowing generally doesn't happen for me, I guess, until after it's happened because I'm just not as sure of things as other people are, perhaps, Your Honor. That can't be the... You're talking, I apologize for interrupting, but you're talking about inmates communicating to guards, and in Farmer versus Brenner, recognizing that that's fraught with peril anyway because of that relationship and the line. And I would submit to the court that under the clearly established part of a qualified immunity, that what these guys did in talking to the other, I mean, talking to the other inmates in Rich versus, I'm sorry, in the Prater case. It may well have been in the ordinary scheme of things. But on these facts, they took the one action that had been pointed out to them would cause harm. And because it did cause harm, my concern is that you're assuming that it had to. Yeah, exposed, right. And we have to look at it as those officers on the scene at the time,  they thought, presumably reasonably, that in talking to these gang members that they would be able to hit that off. But we can't presume reasonableness. We're viewing the evidence and the facts in the light most favorable to Cox at this juncture. Not for purposes of being the finder of fact, but just for purposes of deciding whether a finder of fact gets to consider it. And again, I would simply remind the court that because it was said before and it happened, it doesn't mean that it has to be the case. When you compare it to other cases where the court has not found deliberate indifference, these officers, in this circumstance, were not on notice that what they were doing violated clearly established constitutional rights. And I appreciate that. Thank you, Mr. Quinn. Your Honors, I'd like to speak to something that the court can do for the qualified immunity analysis. And that's determine whether the right was clearly established when these officers acted. Earlier this year, in January, the court decided the state of Armstrong, the village of Pine. That's correct, Your Honor. I am speaking to Mr. Miles. The court in Armstrong earlier this year noted that officers have to have notice in order to be held liable. The court said, quote, a right satisfied the standard when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Sorry, can I ask? I'm going to just ask you the same question and then I'll stop. So the district court found that on this record, in construing the facts most favorably to Cox, a reasonable fact finder could decide that Officer Miles knowingly subjected Cox to a substantial risk of harm from a fellow inmate. Is it your contention that Miles was not on notice, that if he knowingly did that, that that would violate the Eighth Amendment? I would argue similar to Mr. Quinn, that he was not on notice. And I point the court to a different fact, that he's not similarly situated as the other officers. Let's see, but now what you're arguing is that, what I think you're arguing with is the premise. You're saying, no, no, no reasonable fact finder could find that Miles knowingly did that. But I'm saying, just assume for a moment, the district court found to the contrary, not that we have to accept that, but let's assume we're in a world where a reasonable fact finder could find on this record that Officer Miles knowingly subjected Mr. Cox to this risk, a substantial risk of harm from a fellow inmate. Would you still say, okay, fine, he did do that, and he did it knowingly and purposely. Nevertheless, he was not on notice that he couldn't do that. Yes, Your Honor. And that speaks to whether the right was clearly established when he acted. Well, why doesn't Farmer answer the question? I believe that Farmer doesn't answer the question because of the fact that when Mr. Miles acted, and this question was asked of Mr. Williams, he couldn't point to any particular case. What this court has said, even recently, is that the unlawfulness must be apparent in light of preexisting law. And I know that you've cited Farmer's. But when the question for Mr. Miles is whether he knew at the particular time that this occurred, and we'll focus on the second interaction with Mr. Cox because it wasn't Mr. Miles' decision to talk to the involved inmates, that was other officers that did that after he reported it. He is an uncertified officer that has three months of experience that can only do rounds when other certified officers are with him. He approached him Farmer, right? Well, and I don't think there's anything in the record that I can say that he was specifically talking to Farmer. But all I can say is that when he approached Mr. Miles, that particular, or when Mr. Miles approached Mr. Cox at that particular point in time, he had knowledge of everything else that had happened to that during the day. And that's why Mr. Miles wasn't specifically on notice when this occurred. But you're saying that because of all of that, Mr. Miles didn't knowingly subject him to the risk, right? He didn't know. He didn't know there was any substantial risk here. But I'm asking you to assume a reasonable fact finder could find otherwise. If that's true, I don't see where the qualified immunity comes in. Do you see what I'm saying? Yes, Your Honor. I see what you're saying. And I would just point the court to the second piece of the analysis, which is whether the right was clearly established when Mr. Miles acted. Thank you very much. We will ask the clerk to adjourn court for today and come down to Greek Council. The Senate report stands adjourned until tomorrow morning. God save the United States and the Senate report.
judges: Allyson K. Duncan, James A. Wynn Jr., Pamela A. Harris